# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BRIAN PAUL MORENO,

        Plaintiff,

vs.                                Case No.:    3:18-cv-1472-BJD-JBT

SERGEANT LANCE MOORE, et al.,

        Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

### I.    Status

Plaintiff Brian Paul Moreno, an inmate of the Florida Department of Corrections (FDOC), is proceeding in this civil rights action on his verified Second Amended Complaint, which he filed pro se under 42 U.S.C. § 1983. (Doc. 52, "Sec. Am. Compl."). Plaintiff names as defendants Sergeant Lance Moore, Sergeant Trevor Sistrunk, Sergeant Clinton Jackson, Officer Joshua Pharm[1], and Sergeant Steven Rogers, each of whom is a corrections officer with the FDOC (collectively, "Defendants"). Plaintiff sues Moore, Sistrunk, and Pharm for using excessive force and common law battery. He sues Jackson and Rogers for failure to intervene under the Eighth Amendment and the common law.

---

[1] Officer Pharm's name is alternately spelled "Parm" or "Pharm" throughout the case documents. Because the Court does not know the true spelling, the Court will use "Pharm" because that is the name that appears on the docket and in the operative complaint.

Plaintiff seeks nominal, compensatory, and punitive damages against each Defendant in their official and individual capacities.

Before the Court is the Defendants' Motion for "Partial"[2] Summary Judgment. (Doc. 87, Motion). Defendants argue that Plaintiff's suit is partially barred by <u>Heck v. Humphrey</u>,[3] that they are immune from suit to the extent Plaintiff sues them for monetary damages in their official capacity, and that they are entitled to qualified immunity. In support, Defendants submit a copy of a use-of-force report related to the incident in question, a copy of a disciplinary report, and Sergeant Moore's declaration. (Docs. 87-1 through 87-3, "Def. Ex.").

Plaintiff responded with a Declaration in Opposition (Doc. 89 at 1–4), a Statement of Disputed Facts (<u>id.</u> at 5–6), and a Brief in Opposition (<u>id.</u> at 7–14) (collectively, the "Response"). Attached to the Response are Plaintiff's exhibits, which include medical records and a supplemental declaration (Docs. 89-1 through 89-9, "Pl. Ex."). Defendants did not file a reply brief. Thus, the Defendants' Motion is ripe for consideration. The Motion is due to be granted in part and denied in part.

---

[2] "Partial Summary Judgment" is a misnomer because Defendants argue they are entitled to qualified immunity, and qualified immunity is a complete defense both from liability and from suit. <u>Gilmore v. Hodges</u>, 738 F.3d 266, 272 (11th Cir. 2013). Therefore, the Motion is really a motion for summary judgment.

[3] 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

## II.    Summary Judgment Standard

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-movant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the Court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has

3

discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotations omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248, 106 S. Ct. 2505. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III.   Facts[4]

Each of the named Defendants was employed as a correctional officer at Suwannee Correctional Institution ("SCI") on January 3, 2018, the date of the events in question. On January 3, 2018, Plaintiff was using the restroom in the N-Dormitory Housing Unit when Rogers radioed for assistance because another inmate, Todd Asher, appeared to be under the influence. Sec. Am. Compl., § III,

---

[4]   Because the matter is before the Court on the Defendants' motion for summary judgment, the Court views the facts in the light most favorable to Plaintiff. Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 822 (11th Cir. 1997).

¶¶ 1–2. Moore, Jackson, Sistrunk, and Pharm responded to the call, with Moore and Sistrunk proceeding to the restroom area. Moore ordered Plaintiff to get up and leave the restroom area, to which Plaintiff responded that he needed to finish and then he would leave. Id. ¶ 4. Sistrunk proceeded to Plaintiff's left side and Moore proceeded to Plaintiff's right side. Id. ¶ 5. Moore grabbed Plaintiff's right arm and attempted to pull him sideways off the toilet while Plaintiff was sitting and trying to clean himself. Id. ¶ 6. Plaintiff acknowledges that he "pulled back reflexively" to prevent himself from falling off the toilet, at which point Sistrunk began striking him with a clenched fist in the nose and the left side of his face. Id. ¶¶ 7–8; (Doc. 89-6, Pl. Supp. Decl. at 2). Moore tried again to grab Plaintiff's right arm and pulled Plaintiff to the floor, after which Sistrunk and Moore continued to strike Plaintiff. Sec. Am. Compl., § III, ¶ 9; Plaintiff's Decl. (Doc. 89) at 2, ¶ 14. Plaintiff denies that he resisted the officers. Plaintiff's Decl. at 3, ¶ 25. He asserts that he laid on the floor and tried to protect his face from the officers' punches and kicks. Id. Plaintiff alleges that while on the floor, Sistrunk twisted his arm "excessively and repeatedly" and Moore kept striking him, with Plaintiff "crying out in pain" and begging them to stop. Sec. Am. Compl., § III, ¶ 10; Pl. Supp. Decl. (Doc. 89-6) at 2.

Next, Plaintiff asserts that Pharm entered the restroom area and jumped on Plaintiff's back to place him in hand restraints. Sec. Am. Compl, § III, ¶ 11. After Plaintiff was in hand restraints, Pharm struck Plaintiff in the back with

hammer punches and Moore kicked Plaintiff twice in the right eye. Id., ¶¶ 11–12. Then, allegedly without provocation, one officer pepper-sprayed Plaintiff's face and buttocks, after which Sistrunk pulled up Plaintiff's pants. Id., ¶ 13. Meanwhile, Plaintiff asserts, Rogers and Jackson watched the entire incident from the restroom entrance area but did not intervene. Id., ¶ 14.

After the incident, Plaintiff was escorted to confinement for a decontamination shower and was examined by medical staff. Plaintiff says he was referred to one Dr. Figueroa, who referred Plaintiff to an outside hospital "because of significant eye and facial trauma." Id., ¶ 15. Plaintiff states that he suffered numerous injuries from the incident, including multiple fractures to his right orbital eye socket, hematoma and opacification of the right nasal vestibule and right maxillary sinus, and extensive bruising. Id., ¶ 16. According to Plaintiff, he suffers from lingering vision impairment as well as emotional and physical trauma. Id., ¶¶ 17–18. Plaintiff further asserts that the Defendants falsified incident and use-of-force reports to conceal their alleged misconduct. Id., ¶ 19.

Based on these facts, Plaintiff sues Moore, Sistrunk, and Pharm for using excessive force in violation of the Eighth Amendment and for common law battery. Plaintiff sues Rogers and Jackson for failure to intervene, in violation of the Eighth Amendment, and negligent failure to intervene under the common law. He sues the Defendants in both their individual and official capacities.

Plaintiff seeks "nominal damages" of $200,000 per defendant per count, compensatory damages of $200,000 per defendant per count, and punitive damages of $200,000 per defendant per count.[5] Plaintiff requests a jury trial, recovery of costs, and any other relief the Court deems appropriate.

The Defendants dispute Plaintiff's version of events. According to Sergeant Moore's declaration, the events occurred as follows:

> 3. …. On January 3, 2018, [at] approximately 10:34AM, while assigned as the M-Dormitory Housing Supervisor, I responded to N Dormitory due to Inmate Moreno, Brian DC# A50943 being high on an unknown substance.[6] I attempted to place Inmate Moreno in hand restraints. Inmate Moreno then took an aggressive stance and lunged in my direction. I utilized my assigned MK.4 canister # 164 and administered one continuous burst to Inmate Moreno's upper torso area. Inmate Moreno continued his assaultive behavior striking me in the chest with a clenched fist. I used both my hands to block Inmate Moreno's attempt to wrap both his arms around my torso and take me to the ground. At this time Officer Sistrunk utilized his assigned MK4 canister #191 and administered one continuous burst to Inmate Moreno's head and upper torso area. I then redirected Inmate Moreno to the wall chest first, causing him to inadvertently hit his facial area on the wall. Inmate Moreno continued his assaultive behavior and it became necessary for me to force Inmate Moreno chest first to the floor. Due to Inmate Moreno['s] continued assaultive behavior he inadvertently struck his head on the toilet. Inmate Moreno would not submit to hand restraints and began thrashing his body attempting to bite Officer Sistrunk. I began to utilize distractional hammer fist strikes to Inmate Moreno's upper torso area in an attempt [to] gain control of Inmate Moreno's upper torso and place him in restraints. Sergeant Jackson used his knee and body weight to pin inmate Moreno's left leg to the floor, and both his hands to force [Moreno's] right leg to the floor so leg restraints could be applied.

---

[5]   Stated differently, Defendant seeks $1.2 million in damages from each Defendant, consisting of $400,000 in "nominal damages," $400,000 in compensatory damages, and $400,000 in punitive damages, because each Defendant is named in two counts.

[6]   There is a factual dispute about whether it was Plaintiff who was under the influence or another inmate, Todd Asher. Because this matter is before the Court on Defendants' motion for summary judgment, the Court assumes it was Asher who was under the influence.

Officer Parm assisted Sergeant Jackson in placing leg restraints on Inmate Moreno. Inmate Moreno then became compliant with all verbal orders and all force ceased. I utilized and witnessed only the use of the minimal amount of force necessary to bring Inmate Moreno into compliance with all verbal orders.

4. Officer Trevor Sistrunk and I received a post use of force physical with no injuries noted. Inmate Moreno received a disciplinary report for a violation of Fla. Admin. Code 33-601.301-(1-15) battery or attempted battery on a correctional officer.

(Doc. 87-3, Def. Ex. C., Moore Decl. at ¶¶ 3–4).

Defendants also submitted a copy of a use-of-force report, which Sergeant Moore authored (Doc. 87-1, Def. Ex. A, Use-of-Force Report), and a copy of a disciplinary report against Plaintiff (Doc. 87-2, Def. Ex. B, Disciplinary Report). The use-of-force report contains a narrative account of events that is generally consistent with the one that Moore provided in his declaration. The disciplinary report reflects that Plaintiff was found guilty of battery or attempted battery on a correctional officer based on Moore's account of the events. Plaintiff was sanctioned with 36 days of disciplinary confinement and the loss of 60 days' gain time. The use-of-force report indicates there is fixed-wing and handheld video footage of the incident (Def. Ex. A at 1), but Defendants did not submit the video to this Court or cite it in their Motion.

## IV. Defendants' Motion and Plaintiff's Response

First, Defendants argue that Plaintiff is "Heck barred" from disputing the disciplinary report and the need for force. Motion at 8–9. Defendants contend

that "Plaintiff cannot relitigate the correctness of the disciplinary report or that force was used in response to his actions." Id. at 8. According to Defendants, "[t]he question for the jury in this case is whether force was then used maliciously and sadistically for the very purpose of causing harm." Id. at 8–9 (citing Whitley v. Albers, 475 U.S. 312, 320–21 (1986)). Second, Defendants contend they are immune from suit to the extent Plaintiff sues them in their official capacity for monetary damages. Id. at 9. Finally, Defendants argue that they are entitled to qualified immunity. Id. at 9–11.

In response, Plaintiff filed a "Declaration in Opposition to Defendants' Motion for Summary Judgment," a Statement of Disputed Facts, and a Brief in Opposition (Doc. 89, collectively, "Response"), accompanied by exhibits and a supplemental declaration (Doc. 89-1 through 89-8, Pl. Exs. A–H). Plaintiff mostly reiterates the account he set forth in the Second Amended Complaint. He denies resisting or threatening the officers and he denies violating prison rules. Plaintiff's Decl. at 3, ¶ 25. Plaintiff disputes the Defendants' representation that he resisted the officers or disobeyed their commands "befor[e] defendants Moore and Sistrunk used unnecessary force." Statement of Disputed Facts (Doc. 89 at 5), ¶ 3. Plaintiff attached medical records reflecting that he was evaluated by Dr. Alexis Figueroa, a staff physician at SCI, and by a physician at Memorial Hospital in Jacksonville, Florida. (Pl. Ex. B, Memorial Hospital Record; Pl. Ex. C, SCI Medical Record; Pl. Ex. D, Injury Diagram).

According to these records, Plaintiff sustained several injuries to his head and face, including a closed orbital floor (blow-out) fracture, traumatic hematoma of the right eye, and traumatic vision loss in the right eye. Based on his sworn statements and the records, Plaintiff argues there are genuine disputes of material facts that preclude summary judgment for Defendants.

## V.    Discussion

### A. <u>Heck</u> Bar

First, Defendants argue that <u>Heck v. Humphrey</u> partially bars Plaintiff's excessive force claim. Motion at 8–9. Defendants argue that because Plaintiff received a disciplinary report for battery or attempted battery on a correctional officer, and because Plaintiff was found guilty of the charge, <u>Heck</u> bars Plaintiff from "relitigat[ing] the correctness of the disciplinary report or that force was used in response to his actions." <u>Id.</u> at 8. According to Defendants, the only question for the jury in this case "is whether force was then used maliciously or sadistically for the very purpose of causing harm." <u>Id.</u> at 8–9.

In <u>Heck v. Humphrey</u>, the Supreme Court held that a state prisoner's claim for damages "is not cognizable under § 1983 … [if] a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. Challenges to the validity of a conviction or sentence are the province of habeas corpus, not § 1983 lawsuits. <u>Id.</u> at 481 (citing <u>Preiser</u>

v. Rodriguez, 411 U.S. 475, 488–90 (1973)). The Supreme Court extended Heck's holding to a prisoner's challenge to disciplinary proceedings in Edwards v. Balisok, 520 U.S. 641, 643 (1997). There, the Supreme Court held that a prisoner's claim "for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." Id. at 648.

A prisoner need not seek the expungement of a disciplinary report or the restoration of good time credits for the Heck bar to apply. The test is whether a civil judgment in the prisoner's favor would necessarily negate the underlying punishment. See Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). "It is irrelevant that [the prisoner] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, Heck kicks in and bars his civil suit." Okoro v. Callaghan, 324 F.3d 488, 490 (7th Cir. 2003).

That said, Heck does not bar every civil lawsuit that arises from an incident for which the plaintiff was convicted of an offense or received a disciplinary infraction. "[F]or Heck to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory." Dyer v. Lee, 488 F.3d 876, 884 (11th Cir. 2007). "In other words, as long as it is possible that a § 1983 suit would not negate the underlying conviction, then the

suit is not <u>Heck</u>-barred." <u>Id.</u> at 879–80 (emphasis added). Thus, the "<u>Heck</u> inquiry sounds in theoretical possibility," asking "whether it is <u>possible</u> that the facts could allow a successful § 1983 suit and the underlying conviction both to stand without contradicting each other." <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1193 (11th Cir. 2020) (emphasis in original) (citations and internal quotation marks omitted).

The Eleventh Circuit's decision in <u>Dixon v. Hodges</u>, 887 F.3d 1235 (11th Cir. 2018), illustrates the point. There, the prisoner brought an excessive force claim against correctional officers for a use-of-force incident that also resulted in the prisoner receiving a disciplinary infraction for battery or attempted battery on a correctional officer. <u>Id.</u> at 1238. The defendants moved for summary judgment on the excessive force claim based on the <u>Heck</u> doctrine, arguing that Dixon's success on the § 1983 suit would necessarily imply the invalidity of his disciplinary infraction. <u>Id.</u> The district court granted the defendants' motion but the Eleventh Circuit reversed. The court observed that as long as it is possible a § 1983 suit would not negate the underlying punishment, then the suit is not <u>Heck</u>-barred. <u>Id.</u> (citing <u>Dyer</u>, 488 F.3d at 879– 80). "A prisoner may be punished for battery on a prison guard, and that prison guard may be held liable for using excessive force on the prisoner in subduing him; both may be true." <u>Id.</u>

One of the defendants in <u>Dixon</u> contended that "<u>Heck</u> nonetheless applie[d] … because Dixon allege[d] that he did not lunge at [the officer] before [the officer] used force against him. Because Dixon's disciplinary punishment is grounded in those facts, and Dixon is alleging contrary facts in his § 1983 complaint, [the officer] claim[ed] that <u>Heck</u> should bar the suit." <u>Id.</u> The court rejected this argument, which was based on the so-called "inconsistent-factual-allegations rule." The Eleventh Circuit recognized that it had previously said <u>Heck</u> "may bar a prisoner's suit 'if his § 1983 complaint makes specific factual allegations that are inconsistent with the facts upon which his [punishment was] based.'" <u>Id.</u> (quoting <u>Dyer</u>, 488 F.3d at 883 n.9). But, the court explained, the inconsistent-factual-allegations rule applies only in a "narrow category of cases": "where the allegation in the § 1983 complaint is a specific one that both [1] necessarily implies the earlier decision is invalid <u>and</u> [2] is necessary to the success of the § 1983 suit itself." <u>Id.</u> at 1239 (emphasis in original; bracketed numerals added) (citing <u>Okoro</u>, 324 F.3d 488). Notably, "[w]hen a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit, the <u>Heck</u> bar does not apply." <u>Id.</u> The court concluded that such was the case in <u>Dixon</u>.

> The gravamen of Dixon's § 1983 complaint is that Pollock used excessive force against him. The success of this claim is not necessarily dependent on whether Dixon lunged at Pollock or not. His disciplinary punishment, of course, establishes that he did. But that factual finding is not determinative of whether Pollock used excessive force against Dixon. It

is logically possible both that Dixon lunged at Pollock and that Pollock used excessive force against him. Because "there is a version of the facts which would allow the [punishment] to stand" alongside a successful § 1983 suit, <u>Heck</u> does not control.

<u>Id.</u> at 1239–40 (footnote omitted) (quoting <u>Dyer</u>, 488 F.3d at 883).

The same is true here. Defendants concede that a jury question exists as to whether the force used against Plaintiff was excessive. Motion at 8–9. They nevertheless argue that <u>Heck</u> bars Plaintiff from litigating whether it was necessary for the officers to use some degree of force in the first place. But even this limited application of <u>Heck</u> fails under the reasoning of <u>Dixon</u>. Defendants' own argument recognizes that it is not "necessary to the success of the § 1983 suit" for Plaintiff to challenge whether the officers needed to use force, <u>Dixon</u>, 887 F.3d at 1239, for even if Plaintiff cannot challenge the use of force in general, there is still a jury question about "whether force was then used maliciously or sadistically for the very purpose of causing harm," Motion at 9. Therefore, to the extent Plaintiff challenges the disciplinary report, denies resisting the officers, or challenges the general use of force, those allegations are not "necessary to the success of the § 1983 suit itself." <u>Dixon</u>, 887 F.3d at 1239. The gravamen of Plaintiff's complaint is not that Moore, Sistrunk, and Pharm used force, but that they used <u>excessive</u> force.

The success of this claim is not necessarily dependent on whether [Plaintiff resisted the officers] or not. His disciplinary punishment, of course, establishes that he did. But that factual finding is not determinative of whether [Moore, Sistrunk, and Pharm] used excessive force against [Plaintiff]. It is logically possible both that [Plaintiff] lunged

at [or resisted] [the officers] and that [the officers] used excessive force against him. Because "there is a version of the facts which would allow the [punishment] to stand" alongside a successful § 1983 suit, Heck does not control.

Id. at 1239–40.

Moreover, success on Plaintiff's excessive force claim would not "necessarily impl[y] [that] the earlier [disciplinary] decision is invalid." Id. at 1239. The disciplinary report contains a "basis for decision" that states "Subject was found guilty based on the facts in Section I and evidence presented at the hearing on the charge of (1-15) battery or attempted battery on a correctional officer as written by Sgt. L. Moore." (Def. Ex. B at 2). It goes on to say:

> Sgt. Moore responded to N-Dormitory due to Inmate Moreno, Brian DC# A50943 being high on an unknown substance. Sgt. Moore attempted to place Inmate Moreno in hand restraints, Inmate Moreno then took an aggressive stance and lunged in Sgt. Moore's direction. It became necessary to utilize chemical agents in an attempt to prevent battery on staff to no avail. Inmate Moreno continued his assaultive behavior striking Sgt. Moore in the chest with a clenched fist. Sgt. Moore then utilized both of his hands to block Inmate Moreno's attempt to wrap both his arms around his torso to take Sgt. Moore to the ground. It then became necessary to utilize physical force to overcome Inmate Moreno's physical resistance to a lawful command and to prevent further battery on staff.

Id.; see also id. at 1. Notably, the disciplinary report is silent or vague about what happened after Plaintiff was brought to the ground and/or placed in hand restraints. Plaintiff alleges that Moore and Sistrunk continued to beat him after he was brought to the floor. Sec. Am. Compl., § III, ¶¶ 9–10; Plaintiff's Decl. at 2–3, ¶¶ 14–15. He further alleges that after he was put in hand restraints,

Moore and Pharm continued to punch and kick him in the head and back, and that one officer pepper-sprayed his face and buttocks. Sec. Am. Compl., § III, ¶¶ 11–13; Plaintiff's Decl. at 3, ¶¶ 16–18. It is entirely possible that Plaintiff committed each act described in the disciplinary report <u>and</u> that Moore, Sistrunk, and Pharm used excessive force after Plaintiff was subdued. Because there is a potential sequence of events in which Plaintiff is both guilty of battery or attempted battery <u>and</u> a victim of excessive force, <u>Heck</u> does not bar his excessive force claim. <u>See</u> <u>Harrigan</u>, 977 F.3d at 1193 ("Our Court's <u>Heck</u> inquiry sounds in theoretical possibility." (citing <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1333 (11th Cir. 2008))); <u>Sconiers v. Lockhart</u>, 946 F.3d 1256, 1268–70 (11th Cir. 2020) (<u>Heck</u> did not bar inmate's excessive force claims, where inmate pleaded guilty to resisting an officer, because it was possible the inmate resisted the officer and the officer used excessive force after inmate became compliant).

In short, success on Plaintiff's excessive force claim does not depend on him challenging the correctness of the disciplinary report. Nor would success on the excessive force claim <u>necessarily</u> imply the invalidity of his disciplinary infraction or the facts on which it is based. Therefore, the <u>Heck</u> doctrine does not apply.

## B. Sovereign Immunity

Next, Defendants argue that they are immune from suit under the Eleventh Amendment to the extent Plaintiff sues them in their official capacity for monetary damages. Motion at 9. The Court agrees.

A lawsuit against a state officer in his official capacity is the same as a lawsuit against the entity that employs the officer. See McMillian v. Monroe Cnty., 520 U.S. 781, 785 n.2 (1997); Kentucky v. Graham, 473 U.S. 159, 165 (1985). "It is well established that the eleventh amendment immunizes an unconsenting state from suits brought in federal court by its citizens and citizens of other states." Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (citing Edelman v. Jordan, 415 U.S. 651, 662–63 (1974)). A state may waive its sovereign immunity or consent to be sued, or Congress can override the state's immunity. Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1502 (11th Cir. 1995) (internal quotation marks and citation omitted). However, "Congress has not abrogated Eleventh Amendment immunity in section 1983 cases." Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990). And the Eleventh Circuit has further determined that "Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages." Zatler, 802 F.2d at 400;

<u>Gross v. White</u>, 340 F. App'x 527, 530 (11th Cir. 2009) ("Because Florida has not waived its sovereign immunity, Gross' claims are barred.").

Accordingly, to the extent Plaintiff sues Defendants in their official capacity for monetary damages, Defendants are entitled to Eleventh Amendment immunity. However, Plaintiff's suit for monetary damages against Defendants in their individual capacity remains.

## C. Qualified Immunity

Finally, Defendants argue they are entitled to qualified immunity because they were authorized to use force in response to Plaintiff's physical resistance to a lawful command. Motion at 9–11. Because there is a genuine dispute of material fact about whether the use of force was excessive, and because the law is clearly established in this context, the Court disagrees.

Prison officials sued in their individual capacity are "entitled to qualified immunity for [their] discretionary actions unless [they] violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Black v. Wigington</u>, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting <u>Case v. Eslinger</u>, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. <u>Alcocer v. Mills</u>, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine "protects 'all but the plainly incompetent or those who

knowingly violate the law.'" <u>Dist. of Columbia v. Wesby</u>, 138 S. Ct. 577, 589 (2018) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

To be entitled to qualified immunity, an official "must first establish that she or he was acting within the scope of his discretionary authority." <u>Alcocer</u>, 906 F.3d at 951. Here, Defendants were plainly acting within the scope of their discretionary authority during the incident in question. Accordingly, "the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate." <u>Id.</u> (citing <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Overcoming the official's qualified-immunity defense requires a plaintiff to establish both [1] that the officer's conduct violated a constitutionally protected right and [2] that the right was clearly established at the time of the misconduct." <u>Id.</u> (bracketed numerals added) (citing <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009), and <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1254 (11th Cir. 2010)). The first inquiry is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The second inquiry asks whether "the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." <u>Wesby</u>, 138 S. Ct. at 589 (quotation marks and citation omitted). Trial judges have the discretion to determine which prong of the qualified immunity analysis to resolve first. <u>Pearson</u>, 555 U.S. at 236. "[E]ach defendant is entitled to an independent

qualified-immunity analysis as it relates to his or her actions and omissions."

Alcocer, 906 F.3d at 951.

## 1. Excessive Force Allegations Against Moore, Sistrunk, and Pharm

The Court first considers qualified immunity as it concerns Plaintiff's excessive force claim against Moore, Sistrunk, and Pharm. "In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) (citing Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002)).[7]

> There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry.

---

[7]    In Johnson v. Breeden and Fennell v. Gilstrap, 559 F.3d 1212 (11th Cir. 2009), the Eleventh Circuit determined that qualified immunity is never available for excessive force claims arising under the Eighth and Fourteenth Amendments, reasoning that "'the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution....'" Fennell, 559 F.3d at 1217 (quoting Breeden, 280 F.3d at 1321–22). Recently, in light of Kingsley v. Hendrickson, 576 U.S. 389 (2015), the Eleventh Circuit abrogated this exception for excessive force claims under the Fourteenth Amendment, but it still applies to claims arising under the Eighth Amendment, which is the case here. Patel v. Lanier Cnty., Ga., 969 F.3d 1173, 1185–86 (11th Cir. 2020). That said, even if the Court were to separately address whether the law was clearly established as it relates to Defendants' conduct, it would find that it was.

<u>Skrtich</u>, 280 F.3d at 1301 (internal citation omitted). Therefore, as for the Eighth Amendment excessive force claim against Moore, Sistrunk, and Pharm, the Court's qualified immunity analysis begins and ends with determining whether Plaintiff has alleged facts sufficient to survive summary judgment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. In an excessive force case, the core inquiry is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (per curiam) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)). "If force is used maliciously and sadistically for the very purpose of causing harm, then it necessarily shocks the conscience. If not, then it does not." <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1311 (11th Cir. 2007) (internal quotation marks and citations omitted).

As with other Eighth Amendment claims, the Court must consider both a subjective and an objective component: (1) whether the "officials act[ed] with a sufficiently culpable state of mind," and (2) "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." <u>Hudson</u>, 503 U.S. at 8. Under the subjective prong, the Court considers whether officers used force in a good faith effort to maintain or restore order, or instead in a malicious and sadistic effort to cause harm. <u>Skrtich</u>, 280 F.3d at 1300 (citation omitted).

> In determining whether force was used "maliciously and sadistically," we consider: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury inflicted upon the prisoner"; (4) "the extent of the threat to the safety of staff and inmates"; and (5) "any efforts made to temper the severity of a forceful response."

Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019) (quoting Cockrell, 510 F.3d at 1311). The Court "must also give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" Cockrell, 510 F.3d at 1311 (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)). But when jailers continue to use substantial force against a prisoner who has clearly stopped resisting – whether because he has become compliant, been subdued, or otherwise incapacitated – that use of force is excessive. Piazza v. Jefferson Cnty., Ala., 923 F.3d 947, 955–56 (11th Cir. 2019) (collecting cases).

Under the objective prong, the Court considers whether the alleged wrongdoing was "objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9–10 (quotation marks omitted). Therefore, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. A lack of serious injury does not

preclude recovery on an excessive force claim because "[i]njury and force ... are only imperfectly correlated and it is the latter that ultimately counts." <u>Wilkins</u>, 559 U.S. at 38. Nevertheless, the severity of the injury is relevant because (1) the extent of the injury is a factor that may suggest whether using force could have been thought necessary in a particular situation, and (2) "[t]he extent of injury may also provide some indication of the amount of force applied." <u>Id.</u> at 37 (citations omitted).

Defendants concede – and the Court agrees – that a jury question exists as to "whether force was ... used maliciously or sadistically for the very purpose of causing harm." Motion at 8–9. Taking the facts in the light most favorable to Plaintiff, as the Court must at this stage, there is a genuine dispute of material fact about whether Moore, Sistrunk, and Pharm used excessive force against Plaintiff. Plaintiff alleges that Sistrunk repeatedly struck him with a clenched fist in the nose and face after Moore first tried to pull Plaintiff off the toilet. Sec. Am. Compl., § III, ¶¶ 6–8. Plaintiff states that Moore pulled him to the floor, yet Moore and Sistrunk continued to strike him. <u>Id.</u>, ¶¶ 9–10. Taking the facts in the light most favorable to Plaintiff, he did not resist the officers once he was on the floor, but laid there trying to shield his face from being hit. <u>See</u> Plaintiff's Decl. at 3, ¶ 25.[8] Nevertheless, Sistrunk twisted Plaintiff's arm "excessively"

---

[8]    Of course, the disciplinary report establishes that Plaintiff committed battery or attempted battery on a correctional officer, and therefore refutes Plaintiff's assertion that he <u>never</u> resisted the officers. But because the disciplinary report is silent or vague about what

and Moore continuously struck Plaintiff, with Plaintiff "crying out in pain" and begging the officers to stop. Sec. Am. Compl, § III, ¶ 10; Pl. Supp. Decl. at 2. Plaintiff asserts that Pharm then entered the restroom area and jumped on Plaintiff's back to place him in hand restraints. Sec. Am. Compl, § III, ¶ 11. Despite being held down and in restraints, Pharm allegedly struck Plaintiff in the back with hammer punches while Moore kicked Plaintiff twice in the right eye. Id.; Pl. Supp. Decl. at 2. Finally, allegedly without provocation, one officer pepper-sprayed Plaintiff's face and buttocks, after which Sistrunk pulled up Plaintiff's pants. Sec. Am. Compl., § III, ¶ 13. Plaintiff submits medical records reflecting that he suffered an orbital blowout fracture, vision loss in the right eye, and other trauma to his head and face that required hospital treatment. See Pl. Exs. B, C, and D. These injuries cannot be characterized as "de minimis."

The Court treats as testimony the statements in Plaintiff's verified Second Amended Complaint, sworn response, and declaration. Sears, 922 F.3d at 1206 (citing, inter alia, United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018)). His allegations, which are based on personal knowledge, "contain 'non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety.'" Id. at 1208 (quoting Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013)). "That [Plaintiff's] evidence consists mainly of his

_____

happened after Plaintiff was brought to the floor or put in hand restraints, it is possible that Plaintiff had stopped resisting by the time he was on the floor.

own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine dispute of material fact exists." Id. Besides, Plaintiff does not rely exclusively on his own allegations; he submits medical records documenting the extent of his injuries.

Defendants contend that things happened differently, as set forth in Sergeant Moore's declaration, the use-of-force report, and the disciplinary report. They may be right, but that is not the type of documentary evidence that can conclusively refute Plaintiff's allegations at the summary judgment stage. "Here, the officers' documentary evidence consists mainly of various forms of their own testimony." Sears, 922 F.3d at 1208. "Those reports just pit the correctional officers' word against [Plaintiff's] word." Id. That presents the Court with "a classic swearing match, which is the stuff of which jury trials are made." Feliciano, 707 F.3d at 1253. And as discussed earlier, the disciplinary report is silent or vague about what happened after the officers brought Plaintiff to the floor or placed him in hand restraints. "Here the prison disciplinary panel decided only that [Plaintiff] committed battery [or attempted battery] against [Moore]. The panel did not make any factual findings about what the officers did to [Plaintiff] after that." Sears, 922 F.3d at 1207.

Taken in the light most favorable to Plaintiff, the facts suggest that Moore, Sistrunk, and Pharm used force "maliciously and sadistically for the very purpose of causing harm." Cockrell, 510 F.3d at 1311. There is also a

genuine dispute whether the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8. Because Plaintiff alleges facts sufficient to survive summary judgment, "that is the end of the [qualified immunity] inquiry." Skrtich, 280 F.3d at 1301.

### 2. Failure-to-Intervene Allegations Against Rogers and Jackson

Defendants' Motion generically argues that they are all entitled to qualified immunity without separately addressing the failure-to-intervene allegations against Rogers and Jackson. Motion at 9–11. Rogers and Jackson may believe that their entitlement to qualified immunity derives from Moore's, Sistrunk's, and Pharm's asserted entitlement to qualified immunity. In other words, if Moore, Sistrunk, and Pharm are entitled to qualified immunity from Plaintiff's excessive force allegations, so are Rogers and Jackson entitled to qualified immunity for failing to intervene. However, the Court has determined that Moore, Sistrunk, and Pharm are not entitled to qualified immunity because there is a genuine question about whether the officers used excessive force.

The Eleventh Circuit has held many times that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." Skrtich, 280 F.3d at 1301 (collecting cases). "This liability, however, only arises when the officer is in a position to intervene and fails to do

so." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 924 (11th Cir. 2000). "The principle that an officer must intervene when he or she witnesses unconstitutional force has been established in this Circuit for decades." <u>Helm v. Rainbow City, Ala.</u>, 989 F.3d 1265, 1273 (11th Cir. 2021) (citing <u>Priester</u>, 208 F.3d at 927).

Plaintiff avers that Jackson and Rogers stood in the restroom entrance area during the alleged use of excessive force, watched the entire incident, and failed to intervene. Sec. Am. Compl., § III, ¶ 14; Plaintiff's Decl. at 3, ¶ 20. Stated another way, Plaintiff alleges that Rogers and Jackson witnessed the alleged attack, that they were in a position to help, and they stood by. Rogers and Jackson do not really dispute these allegations in their Motion. <u>See generally</u> Motion. "Because a jury could reasonably infer that [Jackson and Rogers were] in a position to intervene against [the other officers'] unlawful use of excessive force against [Plaintiff] and failed to do so, … [Jackson and Rogers are] not entitled to qualified immunity on [Plaintiff's] failure to intervene claim[]." <u>Helm</u>, 989 F.3d at 1281. <u>See also</u> <u>Sears</u>, 922 F.3d at 1209 ("Because Sears' sworn testimony is that Dexter, Roberts, and Hart witnessed the incident but did not attempt to intervene, a genuine issue of material fact precluding summary judgment for them also exists." (citing <u>Skrtich</u>, 280 F.3d at 1301)).

## VI.   Conclusion

The Court does not know the true facts, but it does "know that a genuine dispute of material fact exists, and it precludes granting summary judgment to the correctional officers on [Plaintiff's] § 1983 excessive force and deliberate indifference by failure to intervene claims." <u>Sears</u>, 922 F.3d at 1209. Accordingly, it is hereby **ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 87) is **GRANTED** to the extent Plaintiff may not sue Defendants for monetary damages in their official capacity.

2. Defendant's Motion for Summary Judgment is otherwise **DENIED**.

3. The Court determines that the appointment of counsel for Plaintiff is warranted. Therefore, this case is referred to the Jacksonville Division Civil Pro Bono Appointment Program so that the designated deputy clerk of the Court may seek counsel to represent Plaintiff.

**DONE AND ORDERED** in Jacksonville, Florida this 29th day of June 2021.

BRIAN J. DAVIS
United States District Judge

lc 19
Copies:
Counsel and parties of record
Division Manager